FILED
DEC 10 2010
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PIERRE A. RENOIR, ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> GOVERNOR OF VIRGINIA, et al. ) <br> ) <br> ) <br> Respondents. ) <br> ) | 10 2097 <br><br> Civil Action No. 10-_____ (UNA) |

## MEMORANDUM OPINION

### I.  Introduction.

Pierre A. Renoir is currently incarcerated at the Wallens Ridge State Prison in Big Stone Gap, Virginia, serving "multiple life sentences imposed upon him by the Circuit Court for the City of Roanoke pursuant to convictions for anal sodomy, rape, aggravated sexual battery, indecent liberties, sodomy by fellatio, and object sexual penetration" of his daughter. *Renoir v. Virginia*, No. 7:99-CV-00580-JLK, 2001 WL 34801301, at *1 (W.D. Va. July 31, 2001). The Court has received a petition for a writ of mandamus from Mr. Renoir to compel Respondents—the Governor of Virginia and the President of the United States—to order U.S. Marshals to search his prison cell and remove his cell mate's shivs; place Mr. Renoir into "immediate Federal protection"; recover from the assistant warden a letter allegedly sent to Mr. Renoir from the French Embassy; appoint counsel for Mr. Renoir; and prevent prison officials from denying access to Mr. Renoir by such counsel. Along with his petition, Mr. Renoir provided the clerk with an application to proceed in forma pauperis; a motion to amend the petition to include a plea for protection from an alleged threat to his life and for recognition of

his alleged diplomatic immunity; a motion to appoint counsel; a motion to provide the Embassies of the Republic of France and the State of Japan with notice of this case; a motion for an order directing U.S. Marshals to take various actions to remove the alleged threat to Mr. Renoir's life pending adjudication of the petition, which the Court construes as a motion for a temporary injunction; a motion to prevent the publication, by state or federal authorities, of any photograph, image, or likeness of Mr. Renoir, which the Court construes as a motion for a permanent injunction; and a motion for a status update.

The Court will grant the application to proceed in forma pauperis, because although Mr. Renoir has accumulated "three strikes" and may generally no longer proceed in forma pauperis, he qualifies for the immediate-danger exception to this rule. The Court will deny the motion to amend as unripe, because Mr. Renoir may amend his petition once as a matter of course; the Court will simply consider the petition as amended. The Court will deny the motion to notify the French and Japanese Embassies, because Mr. Renoir has not articulated any reason to do so. The Court will deny the motion for appointment of counsel, because Mr. Renoir has not demonstrated that exceptional circumstances exist such that the denial of counsel would result in fundamental unfairness.

The petition itself must be dismissed. The common-law writ of mandamus has been abolished and the Court has statutory authority to grant mandamus-like relief to compel only federal officers and employees to perform only non-discretionary, ministerial duties owed to a petitioner. The petition will be dismissed as to the Governor of Virginia, because the Court's statutory authority to grant mandamus-like relief does not extend to state officers. The petition will also be dismissed as to the President of the United States, because Mr. Renoir fails to state a

claim upon which relief may be granted, and if a petitioner is proceeding in forma pauperis, the petition must therefore be dismissed as required by the in forma pauperis statute. The portion of the amended petition requesting that the Court recognize Mr. Renoir's diplomatic immunity will be construed as a petition for habeas corpus, which will be dismissed for lack of jurisdiction.

As to the remaining motions: 1) the motion for an order that the U.S. Marshal take various actions to remove the alleged threat to Mr. Renoir's life pending adjudication of Mr. Renoir's petition will be denied as moot, because the petition will have been adjudicated and will no longer be pending; 2) the motion for a permanent injunction against publication of images of Mr. Renoir will be denied, because a permanent injunction is appropriate only after a plaintiff has first prevailed on a claim, and Mr. Renoir has not prevailed on his claim; and 3) the motion for a status update will be denied as moot, because this opinion will inform Mr. Renoir of the status of his case.

## II. The Application to Proceed in Forma Pauperis Will Be Granted.

Under the Prison Litigation Reform Act, a prisoner may not bring a civil action "if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). Mr. Renoir has brought such actions or appeals on three or more prior occasions. *Renoir v. Davidson*, No. 08-cv-333, 2008 WL 2944893, at *1 (E.D. Wisc. July 25, 2008) (noting accumulation of three "strikes"); *Renoir v. Brown*, No. 07-cv-166, 2007 WL 1052477, at *1 (W.D. Va. Apr. 05, 2007) ("Renoir has 'three strikes' under § 1915(g)."). Accordingly, Mr. Renoir may proceed in forma

pauperis only if he can show that he faces imminent danger of serious physical injury.

When determining whether a litigant qualifies for this imminent-danger exception, a court must look to the complaint—here, the petition—which it must "'construe liberally and the allegations of which [it] must accept as true.'" *Ibrahim v. District of Columbia*, 463 F.3d 3, 6 (D.C. Cir. 2006 (quoting *Brown v. Johnson*, 387 F.3d 1344, 1350 (11th Cir. 2004)). Mr. Renoir devotes two pages of his petition to allegations of an "[i]mmediate threat to plaintiff's life." Pet. 5–7. Specifically, Mr. Renoir alleges that his "cell partner has multiple homemade knives he plans to use to kill" him, that prison officials are aware of the risk, but that they intentionally do nothing, "hoping that plaintiff will be killed." *Id.* at 5. Mr. Renoir requests an order to the U.S. Marshals to search his cell "and remove the homemade knives." *Id.* at 9.

Mr. Renoir's allegations of imminent physical danger at the hands of his cell mate and as desired by prison officials are similar to those made in *Ashley v. Dilworth*, where the Court of Appeals for the Eighth Circuit concluded that the imminent-danger exception applied to an inmate where "defendants threatened to transfer him so as to place him near an enemy, intending that he be harmed." 147 F.3d 715, 717 (8th Cir. 1998). Accepting Mr. Renoir's allegations as true, and considering the similarity to *Ashley*, the Court concludes that Mr. Renoir qualifies for the immediate-danger exception. His application to proceed in forma pauperis will therefore be granted.

### III. The Motion to Amend the Petition Will Be Denied, but the Petition Will Be Considered as Amended.

Mr. Renoir has moved the Court, in a combined motion, to both update him on the status of this case and to amend the petition. The Court will consider the request for a status

update below. *See* discussion *infra* Part IX. However, the Court will deny the motion to amend, because it is moot. Mr. Renoir may amend his complaint—here, his petition—once as a matter of course. Fed. R. Civ. P. 15(a)(1). Accordingly, the Court hereby considers the petition amended to include a "plea for court protection from immediate threat to life and for recognition of diplomatic immunity."

As to the request for protection, the Court notes that the petition already contains a plea for "immediate Federal protection," Pet. 9, and that Mr. Renoir has also moved for a temporary injunction to require that certain protective measures be taken. This portion of the amended petition will therefore be considered where the Court discusses the plea for immediate federal protection and the motion for a temporary injunction. *See* discussion *infra* Part VI., VII. As to the request for recognition of diplomatic immunity, the reason Mr. Renoir wishes the Court to recognize such immunity is to collaterally attack his criminal conviction in Virginia. The Court therefore construes this request as a petition for habeas corpus, which will be denied. *See* discussion *infra* Part VI.

### IV. The Motion to Notify the French and Japanese Embassies Will Be Denied.

Mr. Renoir has moved the Court to notify the embassies of Japan and France of the existence of this case and to provide those embassies with copies of all documents filed therein. In support of the motion, Mr. Renoir asserts that he was born in Tokyo, Japan, and that he is a French diplomat. Neither assertion justifies providing notice to these embassies.

Mr. Renoir may have been born in Tokyo, but he is a citizen of the United States. Indeed, he provided the Court with a copy of his consular report of birth abroad, which identifies

that he acquired U.S. citizenship at birth. Mr. Renoir has articulated no other connection between himself or this case and Japan. The Court therefore discerns no interest that Japan could have in this case, and will deny the motion as to the Japanese Embassy.

Mr. Renoir also claims that he is a French diplomat. Many of the documents submitted by Mr. Renoir concentrate on this quixotic claim: that he allegedly had obtained a job with the French Embassy in Washington, D.C., which included a diplomatic passport and thus granted him diplomatic immunity, and that all of this can be proven by a letter from the embassy that is in the possession of the assistant warden. While that may have been relevant to his criminal proceedings, it is of no moment to this civil case. The Court therefore discerns no interest that France could have in this case, and will deny the motion as to the French Embassy.

## V. The Motion for Appointment of Counsel Will Be Denied.

Mr. Renoir also asks the Court to appoint counsel to represent him and to order prison officials to not deny access to Mr. Renoir by such counsel. The in forma pauperis statute provides that "[t]he court may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1); *see* LCvR 83.11(b)(3). In evaluating whether appointment is appropriate, the Court should consider the following factors:

(i) the nature and complexity of the action;
(ii) the potential merit of the pro se party's claims;
(iii) the demonstrated inability of the pro se party to retain counsel by other means; and
(iv) the degree to which the interests of justice will be served by appointment of counsel, including the benefit the Court may derive from the assistance of the appointed counsel.

LCvR 83.11(b)(3); *Gaviria v. Reynolds*, 476 F.3d 940, 943 (D.C. Cir. 2007) (noting that Local Civil Rule 83.11(b)(3) provides the "metric for evaluating appointment of counsel"). None of

these factors supports Mr. Renoir's request for counsel.

First, this mandamus action is not complex, but rather involves relatively simple questions of whether certain duties exist and are owed to Mr. Renoir. Second, considering that this case will be dismissed, *see* discussion *infra* Part VI., it is difficult to say that Mr. Renoir's claims have potential merit. Third, Mr. Renoir has not demonstrated that he is unable to retain counsel by other means; his motion is silent on this point. Finally, the Court will not substantially benefit from, and the interests of justice will not be substantially served by, appointment of counsel, because this case is about to be dismissed. Mr. Renoir's request for counsel will therefore be denied.

## VI. The Petition for a Writ of Mandamus Will Be Dismissed.

In his petition for a writ of mandamus, Mr. Renoir asks the Court to compel the Governor of Virginia and the President of the United States to order U.S. Marshals to search his prison cell and remove his cell mate's shivs; place Mr. Renoir into immediate Federal protection; recover from the assistant warden a letter allegedly sent to Mr. Renoir by the French Embassy; appoint counsel for Mr. Renoir; and prevent officials to from denying access to Mr. Renoir by such counsel. Pet. at 9–10. Mr. Renoir does not distinguish between which remedy he seeks from which official. Because the Court lacks jurisdiction to compel the Governor to do anything, and because the petition fails to state a claim against the President upon which relief can be granted, this petition will be dismissed.

In the amended portion of his petition, Mr. Renoir also asks that the Court recognize his diplomatic immunity. Mr. Renoir thus seeks to have the Court effectively rule that his current confinement is invalid. The Court therefore construes this portion of Mr. Renoir's

petition for a writ of mandamus as a separate petition for a writ of habeas corpus. *See Muhammad v. Close*, 540 U.S. 749, 750 (2004) ("Challenges to the validity of any confinement . . . are the province of haveas corpus . . . .") (citation omitted). "[A] district court may not entertain a habeas petition involving present physical custody unless the respondent custodian is within its territorial jurisdiction." *Stokes v. U.S. Parole Comm'n*, 374 F.3d 1235, 1239 (D.C. Cir. 2004). Mr. Renoir's custodian—a warden in western Virginia—is not within this Court's territorial jurisdiction. The portion of the petition for a writ of mandamus construed as a petition for a writ of habeas corpus will therefore also be dismissed without prejudice.

Mr. Renoir also requests a hearing. *Id.* at 9. The Court is fully apprised of the salient issues and will proceed without a hearing in this matter. *See* Fed. R. Civ. P. 78(b).

### VII. The Motion for a Temporary Injunction Will Be Denied.

In a separate motion, Mr. Renoir asks the Court to order U.S. Marshals to take various actions to remove the alleged threat to his life while the Court considers his petition. Specifically, Mr. Renoir requests, among other things, that Marshals search his cell and remove his cell mate's shivs. Because Mr. Renoir seeks by his motion to diminish a perceived threat to his person pending adjudication of the merits of his petition, which seeks the permanent removal of that threat, the Court construes this motion as one for a temporary injunction. *See* 42 Am. Jur. 2d *Injunctions* § 8 ("The object of a temporary injunction . . . is . . . to prevent a threatened wrong or injury to property or rights until the issues and equities can be determined after a full examination and hearing.")

The Court, however, has already adjudicated Mr. Renoir's petition. *See* discussion *supra* Part VI. The motion for a temporary injunction pending that adjudication is

therefore moot and will be denied.

### VIII. The Motion for a Permanent Injunction Will Be Denied.

Mr. Renoir has also moved the Court to seal "all photographs, images, likenesses, etc., of plaintiff in state or Federal possession" and enter a "permanent gag order . . . to prevent release, publication, exposure, etc.," of the same "in any communication or publication medium, etc." Because Mr. Renoir seeks by his motion to permanently prevent certain publications, the Court construes this motion as one for a permanent injunction. *See* 42 Am. Jur. 2d *Injunctions* § 10 ("A final or permanent injunction is perpetual in effect . . . .").

A permanent injunction is only appropriate, however, after a plaintiff has prevailed on the merits of his claim. *Hi-Tech Pharmacal Co., Inc. v. U.S. Food and Drug Admin.*, 587 F. Supp. 2d 13, 17 (D.D.C. 2008) ("Actual success on the merits is required to obtain permanent injunctive relief.") (citing *Nichols v. Truscott*, 424 F. Supp. 2d 124, 143 (D.D.C. 2006)). Mr. Renoir has not prevailed on the merits of his claims. *See* discussion *supra* Part VI. Permanent injunctive relief is therefore inappropriate, and this motion will be denied.

### IX. The Motion for a Status Update Will Be Denied.

This Memorandum Opinion effectively updates Mr. Renoir on the status of his case, informing him that it has been dismissed and that all motions therein have been denied. An additional status update is unnecessary. The motion for a status update is therefore moot and will be denied.

### X. Conclusion.

For the reasons set forth above, the application to proceed in forma pauperis will be granted, the motion to amend will be denied, the motion to notify the French and Japanese

Embassies will be denied, the motion for appointment of counsel will be denied, the petition for a writ of mandamus and the petition for a writ of habeas corpus incorporated therein will be dismissed, the motion for a temporary injunction will be denied, the motion for a permanent injunction will be denied, and the motion for a status update will be denied. A separate order consistent with this Memorandum Opinion shall issue this date.

Date: 12/3/16

/s/ Royce C. Lamberth
United States District Judge